**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| JEFFREY RAMSEY, | : |
| | : |
| Movant, | : |
| v. | : |
| | : |
| | : Case No. 3:15-MC-14 |
| | : |
| | : |
| UNITED STATES | : |
| DEPARTMENT OF LABOR, | : |
| | : |
| Respondent. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


**SECRETARY OF LABOR'S RESPONSE TO MOTION TO QUASH**

_____

M. PATRICIA SMITH
Solicitor of Labor

OSCAR L. HAMPTON III
Regional Solicitor

DOUGLAS N. WHITE
Associate Regional Solicitor

JOANNE ROSKEY
Counsel for ERISA

EVELYN H. CHUNG
Senior Trial Attorney
New York Bar No. 4190732
1100 Wilson Boulevard, 22nd Floor West
Arlington, VA   22209
Email: chung.evelyn@dol.gov
Phone: (202) 693-9660
Fax: (202) 693-9392

TINA D. DAVILA
Senior Trial Attorney
TX Bar No. 24027549
Office of the Solicitor
525 Griffin Street, Suite 501
Dallas, TX  75202
Email:  davila.tina.d@dol.gov
Phone: (972) 850-3100
Fax: (972) 850-3101

# **TABLE OF CONTENTS**

TABLE OF CONTENTS
TABLE OF AUTHORITIES ................................................................................................. iii
BACKGROUND .................................................................................................................. 1
ARGUMENT ....................................................................................................................... 6
    A.    The Motion to Quash is Moot With Respect to the First Subpoena ............................... 8
    B.    The RFPA and Section 504 of ERISA Require Production of the Records Requested Under the Second Subpoena ........................................................................................ 9
CONCLUSION .................................................................................................................... 12
CERTIFICATE OF SERVICE ............................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Chang v. Tenn. Valley Auth.*, 82 F. Supp.2d 819 (E.D.Tenn. 2000)............................................. 10
*Donovan v. National Bank of Alaska*, 696 F.2d 678 (9th Cir. 1983)............................................. 12
*F.T.C. v. Texaco, Inc.,* 555 F.2d 862 (D.C. Cir.), *cert. denied*, 431 U.S. 974 (1977)) ........... 11, 13
*Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209 (2d Cir. 1987). ................................................ 2
*Marshall v. Amalgamated Ins. Agency Serv., Inc.*, 523 F. Supp. 231 (N.D. Ill. 1981)................. 12
*Pennington v. Donovan,* 574 F. Supp. 708 (S.D. Tex. 1983) ....................................................... 13
*Sandsend Fin. Consultants v. Fed. Home Loan Bank Bd.*, 878 F.2d 875 (5th Cir.1989)7, 9, 10, 12
*United States v. Jackson*, 688 F.2d 1068 (6th Cir. 1982) ................................................................ 9
*United States v. Miller*, 425 U.S. 435 (1976)................................................................................... 7
*United States v. Morton Salt Co.,* 338 U.S. 632 (1950)................................................................. 11
*United States v. Wilson*, 571 F. Supp. 1417 (S.D.N.Y. 1983) ........................................................ 7
*Vouchides v. Houston Community College Sys.*, No. H-10-2559, 2011 WL 4592057 at n. 1
   (S.D.Tex. 2011)............................................................................................................................ 9
*Ward v. U.S. Dep't of Labor*, No. A-14-CV-553-LY, 2014 WL 4388580 (W.D. Tex. Sept. 5,
   2014) ..................................................................................................................................... 8, 11
*Whitt v. Stephens County Eyeglasses*, 529 F.3d 278 (5th Cir. 2008).............................................. 9

**Statutes**

12 U.S.C. § 3405.................................................................................................................... 8, 10
29 U.S.C. § 1106.................................................................................................................. 2, 3, 11
29 U.S.C. § 1134(a)(1).................................................................................................... 2, 3, 10, 11
29 U.S.C. § 1002(14)(B)....................................................................................................... 3
Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. § 1001 *et seq.* ........... 1
Right to Financial Privacy Act of 1978 ("RFPA") 12 U.S.C. § 3410 ................................... passim

**Legislative Materials**

H.R. Rep. No. 1383, 95th Cong. 2nd Sess. 33, reprinted in (1978)............................................. 7
U.S. Code Cong. & Ad. News 9273 ("H.R. Report No. 1383").................................................... 7

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JEFFREY RAMSEY,                                          :
                                                                           :
        Movant,                                 :
    v.                                                        :
                                                                           :     Case No. 3:15-MC-14
                                                                           :
                                                                           :
UNITED STATES                                            :
DEPARTMENT OF LABOR,                                     :
                                                                           :
        Respondent.                             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## SECRETARY OF LABOR'S RESPONSE TO MOTION TO QUASH

This action was initiated by Jeffrey Ramsey, pursuant to Section 1110 of the Right to

Financial Privacy Act of 1978 ("RFPA"), 12 U.S.C. § 3410, to quash an administrative subpoena

*duces tecum* issued by the Secretary of Labor, Employee Benefits Security Administration,

United States Department of Labor ("EBSA" or the "Secretary"), to First Security Bank, N.A.

and its successor, Cierra Bank ("First Bank" or "Bank").  The subpoena requires the production

of certain records in the Bank's possession related to any account in the name of the Benefits

Consulting Group or any predecessors, successors, affiliates or subsidiaries.   For the reasons set

forth herein, the Secretary of Labor respectfully requests that Mr. Ramsey's motion to quash

("Motion to Quash") be denied.

## BACKGROUND

The Secretary of Labor has broad authority to conduct investigations to determine

whether any person has violated or is about to violate any provision of Title I of the Employee

1

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*  ERISA § 504, 29

U.S.C. § 1134(a)(1).

ERISA, among other things, governs the conduct of those with fiduciary responsibilities

for employee benefit plans.  Under Section 404 of ERISA, plan fiduciaries must discharge their

plan duties for the exclusive purpose of providing benefits to participants and defraying

reasonable expenses of administering the plan.  29 U.S.C. § 1104(a)(1)(A).  They must

administer the Plan and its assets solely in the interest of the participants and beneficiaries, and

with the care, skill, prudence, and diligence under the circumstances then prevailing that a

prudent person acting in a like capacity and familiar with such matters would use in the conduct

of an enterprise of a like character and with like aims.  *Id.* § 1104(a)(1)(B).

In addition, ERISA protects plan participants and beneficiaries by expressly prohibiting

certain transactions that are "tainted by a conflict of interest and thus highly susceptible to self-

dealing." *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1213 (2d Cir. 1987).  *See also*

ERISA § 406, 29 U.S.C. § 1106.  Section 406(a) governs transactions between a Plan or its

fiduciaries and certain parties who have an inherent conflict of interest vis-à-vis the Plan.  29

U.S.C. § 1106(a).  Likewise, Section 406(b) prohibits fiduciaries from engaging in self-dealing

transactions, such as dealing with assets of a plan for her own interest, acting in any transaction

involving the plan on behalf of a party whose interests are adverse to the interest of the plan, or

receiving any personal consideration in connection with a transaction involving plan assets.  29

U.S.C. § 1106(b).

EBSA is conducting an investigation of The Chimes, D.C., Inc., Health and Welfare Plan

(the "Plan"), an employee benefit plan sponsored by The Chimes, D.C., Inc. ("Chimes"), which

is the plan administrator and a fiduciary of the Plan.  Gharanfoli Decl. at ¶¶ 2, 3, 4.  Siamack

Gharanfoli is the senior investigator assigned by EBSA to this case and his declaration is

attached hereto as Exhibit A.  In his declaration, Investigator Gharanfoli explains that EBSA's

investigation of the Chimes Plan was initiated pursuant to Section 504(a)(1) of ERISA, 29

U.S.C. § 1134(a)(1), to determine if any person has or is about to violate Sections 404 and 406 of

ERISA with respect to the Plan.  Gharanfoli Decl. at ¶ 2.   Among other things, EBSA is

investigating whether the Plan's fiduciaries prudently and loyally manage the Plan and its assets,

including the fees paid to the Plan's service providers, and whether any fiduciary committed a

prohibited transaction.  *Id.*

Benefits Consulting Group ("Benefits Consulting Group") provides services to the Plan

and therefore is a party in interest to the Plan within the meaning of Section 3(14)(B) of ERISA.

Gharanfoli Decl. at ¶ 4.  *See also* 29 U.S.C. § 1002(14)(B).  During the course of EBSA's

investigation and prior to issuing its first subpoena on First Bank, EBSA learned that the Plan

had made payments to one or more of Benefits Consulting Group's accounts at First Bank.  *Id.* at

¶ 7.  EBSA further learned that payments were made from one or more of Benefits Consulting

Group's account(s) at First Bank to an entity affiliated with Plan fiduciaries were made.  *Id.* at ¶

12.  Among other things, EBSA is evaluating whether any of these transactions involving

Benefits Consulting Group violate Section 406 of ERISA, or whether any fiduciary breached its

duties under Section 404 with respect to such transactions.  *Id*. at ¶ 7.

On February 4, 2014, Marc I. Machiz, Regional Director for the Philadelphia Regional

Office of EBSA, issued a subpoena *duces tecum* to First Bank ("First Subpoena").  Motion to

Quash at Exh. 2.  In the First Subpoena, EBSA requested the production of certain documents

pertaining to all accounts in the name of the Plan or Benefits Consulting Group or any

predecessors, successors, affiliates or subsidiaries.  *Id.*  The First Subpoena did not request any

records in Mr. Ramsey's name.  *Id.*  The First Subpoena was tailored to request documents that

would permit EBSA to conduct a full analysis of all transactions that may have occurred between

Benefits Consulting Group and the Plan or its fiduciaries.  Gharanfoli Decl. at ¶ 9.  Prior to

issuing the First Subpoena, EBSA investigator Siamack Gharanfoli contacted First Bank and was

advised that the account under Benefits Consulting Group's name was a business account.

Gharanfoli Decl. at ¶ 10.

On February 14, 2014, First Bank produced records in response to EBSA's subpoena,

including records related to accounts in the name of Benefits Consulting Group and BCGHR,

LLC ("BCGHR").  Gharanfoli Decl. at ¶ 11.  First Bank produced the records electronically, via

a CD.  *Id.*  Mr. Ramsey does not contend that BCGHR, a corporation, is protected by the RFPA.

*See generally* Ramsey Motion and Exh. 1.   *See also* 12 U.S.C. § 3401 (RFPA protects persons,

not corporations).  Based on the BCGHR bank records, EBSA discovered that BCGHR acts as a

trustee to multiple employee benefit plans to which it was also providing additional services for a

fee.  Gharanfoli Decl. at ¶ 12.   In its role as trustee to these plans, BCGHR has check-writing

authority over bank accounts containing ERISA plan assets.  *Id.* at ¶ 12. Checks for the BCGHR

account are authorized with what appears to be Mr. Ramsey's signature.  *Id.* at ¶ 13.

Mr. Ramsey was administratively deposed as part of EBSA's investigation on November

6, 2014.  Gharanfoli Decl. at ¶ 13.  During the administrative deposition, Investigator Gharanfoli

presented Mr. Ramsey with images of checks deposited into the BCGHR bank account from an

employee benefit plan controlled by BCGHR.  *Id*. at ¶ 13.  Mr. Ramsey was not presented with

any records from any account under the name of Benefits Consulting Group during his

November 6, 2014 sworn testimony, nor did EBSA introduce any information obtained

exclusively from Benefits Consulting Group bank records.  *Id.* at ¶ 14. Mr. Ramsey denied

signing the checks and claimed that he never authorized anyone to sign his name on the account.

*Id.* at  ¶ 13.  In order to further investigate these plan transactions, Investigator Gharanfoli

contacted plan sponsors using information from the account records of BCGHR.  *Id.* at ¶ 14.

EBSA did not identify or contact any of Mr. Ramsey's business associates or customers based solely on the Benefits Consulting Group records.  *Id.* at ¶ 14.

On or around December 11, 2014, Mr. Ramsey sent correspondence to counsel for the Secretary of Labor, Jodeen Hobbs, in which he objected to EBSA's subpoena of "Mr. Ramsey's bank records" without following RFPA's customer notice procedures.  Motion to Quash at Ex. 3. Ms. Hobbs responded by letter on January 26, 2015. *Id.*  While noting that EBSA had not subpoenaed any records in Mr. Ramsey's name, Ms. Hobbs's letter explained that EBSA would delete the digital files relating to the Benefits Consulting Group's account at First Bank and issue a new subpoena with notices conforming to the RFPA. Motion to Quash at Ex.4.  EBSA deleted the disputed records in their unaltered, digital form. Gharanfoli Decl. at ¶ 16.  EBSA thus effectively withdrew its First Subpoena with respect to Benefits Consulting Group's bank records and has not used the records in its investigation.

On January 26, 2015, Regional Director Marc I. Machiz issued a new subpoena to First Bank ("Second Subpoena").  The Second Subpoena requested the production of documents pertaining to accounts in the name of Benefits Consulting Group. Gharanfoli Decl. Exh. A.  Like the First Subpoena, the Second Subpoena was tailored to require the production of documents that would permit EBSA to conduct a full analysis of all transactions that may have occurred between Benefits Consulting Group and the Plan or its fiduciaries.  EBSA sent Mr. Ramsey the following: (1) a letter to Mr. Ramsey notifying him that EBSA requested records or information concerning his transactions held by First Bank; (2) a Customer Consent and Authorization for Access to Financial Records; (3) a Motion for Order Pursuant to Customer Challenge Provisions of the Right to Financial Privacy Act of 1978, related instructions and certificate of service; (4) a Sworn Statement of Movant form; and (5) a copy of the Second Subpoena and cover letter that was directed to First Bank.  *Id.*

On February 12, 2015, Mr. Ramsey filed this motion to quash the Secretary's subpoena,

pursuant to Section 1110 of the RFPA.  Motion to Quash at 1.  *See also* 12 U.S.C. 3410.  Mr.

Ramsey does not claim that EBSA failed to comply with the RFPA's customer notice

requirements with respect to the Second Subpoena.  Rather, Mr. Ramsey objects to the

production of financial records of Benefits Consulting Group on the grounds that the documents

requested have no connection with the investigation's subject matter, that he has not committed

any offense related to the investigation, and/or that he is the subject of harassment by the

requests.  *See* Ramsey's Motion to Quash at 4.  He therefore requests that the Court quash

EBSA's subpoena.[1]

As described more fully herein, these reasons are not legally sufficient under the RFPA to

quash EBSA's subpoena.  Accordingly, the Secretary of Labor respectfully requests that Mr.

Ramsey's motion be denied and that First Bank be ordered to promptly produce the subpoenaed

records.

## ARGUMENT

The Right to Financial Privacy Act of 1978 was passed in response to the Supreme

Court's decision in *United States v. Miller*, 425 U.S. 435 (1976), holding that a customer of a

financial institution has no standing under the Constitution to contest government access to his

financial records.  H.R. Rep. No. 1383, 95th Cong. 2nd Sess. 33, reprinted in (1978) U.S. Code

Cong. & Ad. News 9273, 9306 ("H.R. Report No. 1383").  The RFPA grants "customers a

limited right to challenge subpoenas served by federal officials on banks and other financial

institutions."  *United States v. Wilson*, 571 F. Supp. 1417, 1420 (S.D.N.Y. 1983).  Congress

---

[1] Mr. Ramsey does not specify whether the First Subpoena or the Second Subpoena should be quashed.  As discussed in this section, any requests to quash the First Subpoena have been rendered moot by EBSA's subsequent efforts to cure any deficiencies in notice.

intended the RFPA to provide procedural protection only; it created no new privacy rights.  H.R.

Report No. 1383 at 9306.

"The RFPA sets out the procedures and grounds for challenging a subpoena and provides

the 'sole judicial remedy available to a customer to oppose disclosure of financial records

pursuant to this chapter.'" *Sandsend Fin. Consultants v. Fed. Home Loan Bank Bd.*, 878 F.2d

875, 877 (5th Cir. 1989) (quoting 12 U.S.C. § 3410(e)).  When the government issues subpoenas

relating to an account in the customer's name, the government is required to serve the customer

notice of the subpoena and of the RFPA procedures to challenge the disclosures.  12 U.S.C. §

3405.  Upon receiving notice, the customer may file a challenge to the subpoena in federal

district court.  12 U.S.C. § 3410.  There are only three grounds on which a district court may

quash a subpoena under the RFPA: (1) the government's inquiry is not a legitimate law

enforcement inquiry, (2) the financial records sought are not relevant to a legitimate law

enforcement inquiry, or (3) the government has not substantially complied with the customer

notice requirements of the statute.  *Sandsend Fin. Consultants,* 878 F.2d at 882.  "If the court

finds that . . . there is a demonstrable reason to believe that the law enforcement inquiry is

legitimate and a reasonable belief that the records sought are relevant to that inquiry, it shall

deny the motion or application, and, in the case of an administrative summons or court order

other than a search warrant, order such process enforced."  12 U.S.C. § 3410(c).  *See also Ward*

*v. U.S. Dep't of Labor*, No. A-14-CV-553-LY, 2014 WL 4388580, at *2 (W.D. Tex. Sept. 5,

2014) (denying motion to quash on RFPA grounds in EBSA's investigation of the Chimes Plan).

Mr. Ramsey does not specify whether he seeks to quash the First or Second Subpoena.

However, as explained below, his Motion to Quash is moot with respect to the First Subpoena

and no grounds exist for quashing the Second Subpoena.

A.  The Motion to Quash is Moot With Respect to the First Subpoena

As an initial matter, EBSA has effectively withdrawn its First Subpoena with respect to

the Benefits Consulting Group accounts by deleting the Benefits Consulting Group records

disclosed by First Bank in response to the First Subpoena.  Contrary to Mr. Ramsey's assertion

that EBSA used information obtained pursuant to the First Subpoena to administratively depose

Mr. Ramsey, Investigator Gharanfoli has attested that the Benefits Consulting Group's bank

records were not used in the administrative deposition or as the sole source to develop any

questions for the administrative deposition.  (Gharanfoli Decl. at ¶¶ 11-16.)[2]  Consequently, the

Motion to Quash has been rendered moot insofar as it relates to the First Subpoena.  *See In re*

*Grand Jury Investigation*, *United States v. Jackson*, 688 F.2d 1068, 1069 (6th Cir. 1982) (motion

to quash dismissed as moot because government voluntarily withdrew subpoenas); *Vouchides v.*

*Houston Community College Sys.*, No. H-10-2559, 2011 WL 4592057 at n. 1 (S.D.Tex. 2011)

(motion to quash and for a general protective order dismissed as moot because subpoenas were

withdrawn).

---

[2] Mr. Ramsay requests that the Court sanction the Secretary for spoliation.  (Motion to Quash at n. 3.)  Without waiving the Secretary's objections to an adverse inference, the Secretary simply notes that even if Mr. Ramsay could meet the elements of an adverse inference, which he cannot, any inference would be irrelevant and immaterial to the relief sought by Mr. Ramsay.  *See Whitt v. Stephens County Eyeglasses*, 529 F.3d 278 (5th Cir. 2008) (adverse inference, even if warranted, would not substantially affect judgment).  An inference that EBSA made notations on the records received from First Bank or used them in its investigation would have no impact on the "strictly limited" inquiry of the Court on a motion to quash under Section 1110 of the RFPA, i.e. whether the records under the Second Subpoena are relevant to a legitimate enforcement inquiry and whether proper notice was served vis-à-vis the Second Subpoena.  *See Sandsend Fin. Consultants, LTD. V. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 878-79 (5th Cir. 1989).  In any case, and without waiving its right to proffer additional evidence, the Secretary further notes that Investigator Gharanfoli's affidavit clearly states that the documents were not modified before deletion and that they were not used to obtain other evidence in the investigation.  Gharanfoli Decl. at ¶¶15-16.

B.  The RFPA and Section 504 of ERISA Require Production of the Records Requested
    Under the Second Subpoena

In addition, Mr. Ramsey's motion to quash the Second Subpoena has no legal basis,

because the Benefits Consulting Group records requested under the Second Subpoena are

relevant to a legitimate law enforcement inquiry and EBSA has complied with the customer

notice requirements of the RFPA.  Assuming *arguendo* that the RFPA applies to Benefits

Consulting Group, a sole proprietorship, EBSA fully complied with the customer notice

procedures under 12 U.S.C. § 3405 when issuing the Second Subpoena, and thereby cured any

prior deficiencies in notice.  *See Chang v. Tenn. Valley Auth.*, 82 F. Supp.2d 819, 821 (E.D.Tenn.

2000) (agency's subsequent disclosures cured deficiency in notice issued in connection with first

subpoena).

Moreover, the Second Subpoena plainly seeks documents that are relevant to EBSA's

legitimate enforcement inquiry.  In *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank

Bd.*, the Fifth Circuit identified two important principles that inform a district court's analysis of

challenges to an agency's request for financial records. 878 F.2d at 878-79.  The Fifth Circuit

first noted that "an administrative agency's power to issue subpoenas as it performs its

investigatory function is a broad-ranging one which courts are reluctant to trammel." *Id.*  A

governmental agency's "power of inquisition" is analogous to a grand jury "which does not

depend on a case or controversy for power to get evidence but can investigate merely on

suspicion that the law is being violated, or even just because it wants assurance that it is not." *Id.*

*(relying on United States v. Morton Salt Co.,* 338 U.S. 632, 642 (1950)).  Consequently, the court

plays a "strictly limited" role when reviewing a subpoena. *Id. (relying on F.T.C. v. Texaco, Inc.,*

555 F.2d 862, 872 (D.C. Cir.), *cert. denied*, 431 U.S. 974 (1977)).  The "court's inquiry is

limited to two questions: (1) whether the investigation is for a proper statutory purpose and (2)

whether the documents the agency seeks are relevant to the investigation." *Id.* (citations

omitted).  In this case, the Second Subpoena easily satisfies both requirements.

As explained above, EBSA's investigation is a legitimate law enforcement inquiry

authorized by Section 504 of ERISA, to determine whether any person has or is about to violate

Section 404 or 406 of ERISA.  Gharanfoli Decl. at ¶ 7.  In fact, the Secretary's investigation in

this case already has been recognized as a legitimate law enforcement inquiry by another federal

district court in response to a separate motion to quash. *See Ward*, 2014 WL 4388580, at *2

(denying motion to quash under RFPA because EBSA's investigation of the Chimes Plan is a

legitimate law enforcement inquiry).

The documents requested in the Second Subpoena are relevant to this proper statutory

purpose. Using information obtained independently from the First or Second Subpoena, EBSA

has determined that the Plan made payments into Benefits Consulting Group's account at First

Bank account and Benefits Consulting Group made payments benefitting, directly or indirectly,

potential Plan fiduciaries.  (Gharanfoli Decl. at ¶ 12-14.)  Therefore, the Secretary's evaluation

of Benefits Consulting Group's bank records are relevant to determine whether the Plan's assets

were used for any purpose that violates ERISA, including for the direct or indirect benefit of the

Plan fiduciaries.

Mr. Ramsey argues that EBSA is not conducting a legitimate law enforcement inquiry

into Mr. Ramsey and that he has not committed any offense related to the investigation.

However, EBSA may investigate "merely on suspicion that the law is being violated, or even just

because it wants assurance that it is not." *Sandsend*, 878 F.2d at 878-79.  Even where the target

of the subpoena is "tangential" to the investigation, the courts will allow access to relevant

financial records.  *Id.*  Nor is EBSA required to specifically disclose its reasons for requesting the

documents in order to establish the relevance of the documents to its investigation, although it

has provided considerable detail in response to this Motion to Quash. In *Donovan v. National Bank of Alaska*, the Ninth Circuit framed the issue:

> The proper scope of an ERISA investigation can be determined only by reference to the statute itself; the appropriate inquiry is whether the information sought might assist in determining whether any person is violating or has violated any provision of Title I of ERISA.

696 F.2d 678, 684 (9th Cir. 1983). "To require a more specific recital of the purposes for which this investigation is being conducted in order to determine whether the materials sought by the subpoena may be relevant to the investigation would, in practical effect, force the DOL to reveal its investigative plan." *Marshall v. Amalgamated Ins. Agency Serv., Inc.*, 523 F. Supp. 231, 234 (N.D. Ill. 1981) (internal citations omitted); *accord, Pennington v. Donovan,* 574 F. Supp. 708 (S.D. Tex. 1983) (Secretary met burden of stating with "reasonable specificity" the nature of his investigation, when he stated that EBSA was investigating to determine whether any person has violated or is about to violate any provision of Title I of ERISA). "[A]n investigating agency is under no obligation to propound a narrowly focused theory of a possible future case. . . . The court must not lose sight of the fact that the agency is merely exercising its legitimate right to determine the facts, and that a complaint may not, and need not, ever issue." *F.T.C. v. Texaco, Inc.*, 555 F.2d 862, 874 (D.C. Cir. 1977).

Applying this rule, the Secretary has more than met his burden of establishing that he is engaged in a legitimate law enforcement inquiry and that the documents requested in the Second Subpoena are relevant to that investigation. Therefore, the Second Subpoena should be enforced and First Bank should be directed to produce all records called for thereunder.

11

## CONCLUSION

For the foregoing reasons, the Secretary respectfully requests that the Court enter an

order denying the Mr. Ramsey's Motion to Quash, upholding the Second Subpoena and directing

First Bank to produce all records called for under the Second Subpoena.

Respectfully submitted,

M. PATRICIA SMITH
Solicitor of Labor

OSCAR L. HAMPTON III
Regional Solicitor

DOUGLAS N. WHITE
Associate Regional Solicitor

JOANNE ROSKEY
Counsel for ERISA

By:    /s/ *Evelyn H. Chung*
EVELYN H. CHUNG
Senior Trial Attorney
NY Bar No. 4190732
Office of the Solicitor
1100 Wilson Boulevard, 22nd Floor West
Arlington, VA 22209
Email: chung.evelyn@dol.gov
Phone: (202) 693-9660
Fax: (202) 693-9392

TINA D. DAVILA
Senior Trial Attorney
TX Bar No. 24027549
Office of the Solicitor
525 Griffin Street, Suite 501
Dallas, TX  75202
Email:  davila.tina.d@dol.gov
Phone: (972) 850-3100
Fax: (972) 850-3101

U.S. DEPARTMENT OF LABOR

12

# CERTIFICATE OF SERVICE

I certify that on March 5, 2015, I electronically filed this document with the Clerk of Court

using the CM/ECF system which will send notification to:

Kristin L. Bauer
Jackson Lewis P.C.
500 N. Akard, Suite 2500
Dallas, TX 75201
Attorney for Movant


*s/ Evelyn H. Chung*
EVELYN H. CHUNG
Senior Trial Attorney

13